2003 ND 73

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Bruce Charles TOLLEFSON, Defendant and Appellant.**

**No. 20020197.**

Supreme Court of North Dakota.

May 6, 2003.

C. Charles Chinquist, Fargo, for defendant and appellant.

Tracy Jo Peters, Assistant State's Attorney, Fargo, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Bruce Tollefson appeals from the April 10, 2002, order denying suppression of evidence and the final criminal judgment entered upon his conditional guilty plea to four counts of drug-related charges. We affirm.

I

[¶ 2] On November 16, 2001, Tollefson was driving his vehicle on Sheyenne Street when a West Fargo police officer stopped him for speeding. The officer approached Tollefson's vehicle and asked for his driver's license. Tollefson indicated he did not have his license with him. During this exchange, the officer noticed the smell of alcohol on Tollefson's breath. She asked Tollefson to step out of his vehicle and return to the patrol vehicle with her.

[¶ 3] While walking back to the patrol vehicle, the officer observed that Tollefson was acting "jumpy" and "jittery." Tollefson began to dig in his pockets and fumble with his waistband. The officer repeatedly asked Tollefson to keep his hands out of his pockets and waistband, but Tollefson continued to fidget with his pants.

[¶ 4] The officer explained to Tollefson that she was going to conduct a pat down search for safety purposes. While patting Tollefson down, the officer felt a hard cylindrical object, about three to four inches long, in the pocket of Tollefson's jeans. The officer asked Tollefson if there was anything in his pocket that could poke or hurt her. She reached in and removed the object from Tollefson's pocket. It was a hard plastic tube used to ingest methamphetamine and a piece of aluminum foil with drug residue.

[¶ 5] The officer placed Tollefson in the back seat of the patrol vehicle and proceeded to run a computer check. Tollefson continued to be very "jumpy" in the backseat of the patrol vehicle and was talking continuously on his cell phone. The computer check confirmed that Tollefson did have a current driver's license.

[¶ 6] At this time, the officer still detected an odor of alcohol coming from Tollefson's breath, so she asked him to take a breathalyzer test and standardized field sobriety tests. Tollefson passed the breathalyzer test and the Horizontal Gaze Nystagmus test, but failed the walk-and-turn test. The results of the tests and Tollefson's continued "jumpy" behavior led the officer to believe that Tollefson was not under the influence of alcohol but, rather, under the influence of some other drug. The officer placed Tollefson under arrest for possession of the drug paraphernalia found in his pocket and transported him to the West Fargo Police Department to do further testing with a Drug Recognition Expert. Tollefson was subsequently arrested at the police department for driving under the influence and driving without liability insurance. Tollefson's vehicle was searched incident to arrest, revealing large quantities of methamphetamine and marijuana.

[¶ 7] Tollefson was charged with Possession of a Controlled Substance (methamphetamine) with Intent to Deliver, a Class AA Felony; Possession of a Controlled Substance (marijuana) with Intent to Deliver, a Class B Felony; Possession of Drug Paraphernalia, a Class C Felony; and Possession of a Controlled Substance (marijuana), a Class A Misdemeanor. On January 7, 2002, Tollefson filed a motion to suppress. A hearing was held on February 13, 2002, and briefs were later submitted by both parties. On April 10, 2002, the trial court issued its order denying Tollefson's motion to suppress. Tollefson subsequently entered a conditional guilty plea to all charges, pending the outcome of this appeal.

[¶ 8] On appeal, Tollefson argues the trial court wrongly denied his motion to suppress. Tollefson contends the pat down search performed by the officer exceeded its permissible scope at the point when the officer reached into Tollefson's pocket. Therefore, Tollefson asserts that the evidence retrieved from his pocket and the evidence subsequently discovered in his vehicle should be suppressed. We disagree.

II

[¶ 9] When reviewing a trial court's denial of a suppression motion, our standard of review is clear:

We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence.

*State v. Heitzmann,* 2001 ND 136, ¶ 8, 632 N.W.2d 1 (quoting *State v. Overby,* 1999 ND 47, ¶ 5, 590 N.W.2d 703). Questions of law, however, are fully reviewable. *See Heitzmann,* at ¶ 8.

III

[¶ 10] Tollefson does not argue that the stop of his vehicle was improper. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In this case, the officer used a radar gun to establish Tollefson's vehicle was traveling in excess of the speed limit. The speeding violation constituted a sufficient reason for the officer to stop the vehicle. *See State v. Storbakken,* 552 N.W.2d 78, 81 (N.D.1996).

## IV

■ [¶ 11] Tollefson also does not challenge the officer's right to perform a limited pat down search for weapons. The Supreme Court of the United States has explained:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Haverluk*, 2000 ND 178, ¶ 22, 617 N.W.2d 652. In this case, Tollefson's actions of repeatedly reaching into the pockets and waistband of his jeans, even after being told not to do so, gave the officer an articulable suspicion that Tollefson might be armed and dangerous. A protective pat down search for weapons was warranted to ensure the officer's safety.

## V

[¶ 12] Tollefson does contest, however, the scope of the pat down search that was performed. In its order denying Tollefson's motion to suppress, the trial court made the following findings of fact:

1) The "pat-down" search of the Defendant yielded an object that could have been a weapon.

2) Officer Rhonda Haff was reasonably concerned for her safety.

3) Officer Haff was entitled to retrieve the item from the Defendant's pocket.

4) Once the drug paraphernalia was removed from the Defendant's pocket, he was placed under arrest, and the subsequent search of his vehicle was a valid search incident to that arrest.

■ [¶ 13] To comply with the Fourth Amendment, a pat down search must consist "solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." *Heitzmann*, 2001 ND 136, ¶ 13, 632 N.W.2d 1 (quoting *Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). The performance of a pat down search does not automatically entitle the officer to perform a pocket search. *See Heitzmann*, at ¶ 13. If, during the pat down search, the officer locates an object, but is able to determine through the sense of touch that the object is not a weapon, the pat down search must stop and no pocket search may be performed. *See id.* However, because "[w]eapon verification is essential if safety is to be preserved[,] ... [w]e cannot impose a condition of certainty that the object is a weapon before allowing an officer to continue the pat search to the inner clothing site where the object is located. To do so would frustrate the objective of the pat search." *State v. Zearley*, 444 N.W.2d 353, 358 (N.D.1989) (quoting *People v. Thurman*, 209 Cal.App.3d 817, 257 Cal.Rptr. 517, 521 (1989)). Rather, if the pat down search reveals an object of a size and density that would reasonably suggest it might be a weapon, the officer may continue to search the inner garments where the object is located to determine whether the object is, in fact, a weapon. *See Heitzmann*, at ¶ 13; *see also* 4 Wayne R. LaFave, *Search and Seizure* § 9.5(c), at

278–79 (3d ed. 1996) ("[T]he question is whether its 'size or density' is such that it might be a weapon.").

[¶ 14] At the suppression hearing, the officer testified that although she thought the object she felt in Tollefson's pocket might have been a one-hitter marijuana pipe, she was not sure what the object was. The object the officer felt in Tollefson's pocket was cylindrical, approximately three to four inches long, and made of a hard substance. It was of a size and density that reasonably suggested it was a weapon. The officer also testified because of Tollefson's erratic behavior, she was concerned for her safety and concerned the object in Tollefson's pocket might have been a weapon.

[¶ 15] An officer who reasonably believes a suspect may have a weapon in his pocket, but who is unable to determine with certainty if the object is a weapon during the pat down search, acts reasonably by reaching into the pocket to recover the object. *See Heitzmann*, 2001 ND 136, ¶ 14, 632 N.W.2d 1; *see also United States v. Oates*, 560 F.2d 45, 62 (2d Cir.1977); *United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir.1988); *United States v. Strahan*, 984 F.2d 155, 158 (6th Cir.1993); *United States v. Thompson*, 597 F.2d 187, 191 (9th Cir.1979); *State v. Vasquez*, 167 Ariz. 352, 807 P.2d 520, 524 (1991); *Shaver v. State*, 332 Ark. 13, 963 S.W.2d 598, 600 (1998); *People v. Allen*, 50 Cal.App.3d 896, 123 Cal.Rptr. 80, 83 (1975); *People v. Ratcliff*, 778 P.2d 1371, 1380 (Colo.1989); *People v. Gunsaullus*, 72 Ill.App.3d 440, 28 Ill.Dec. 943, 391 N.E.2d 142, 146–47 (1979); *State v. Bitterman*, 304 Minn. 481, 232 N.W.2d 91, 94 (1975); *State v. Storey*, 713 A.2d 331, 334–35 (Me.1998); *State v. Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162, 171 (1993); *State v. Hudson*, 124 Wash.2d 107, 874 P.2d 160, 163 (1994); *State v. McGill*, 234 Wis.2d 560, 609 N.W.2d 795,

803–04 (2000). Because the object in Tollefson's pocket was of a size and density to reasonably suggest it was a weapon, the officer in this case was entitled, for her own safety, to take the action necessary to confirm the object in Tollefson's pocket was not a weapon.

## VI

[¶ 16] Finally, we address Tollefson's argument that under *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), an officer may not seize an object from a suspect's pocket unless the object's "contour or mass makes its identity immediately apparent." However, what the United States Supreme Court held in *Dickerson* was that the police may seize "immediately apparent" non-threatening contraband detected through the sense of touch during a protective pat down search. *See id. Dickerson* does not apply where, as in this case, an officer enters a suspect's pocket to retrieve what the officer reasonably believes could be a weapon. *See Evans*, 618 N.E.2d at 170 n. 5 ("*Dickerson* has no relevance to circumstances ... where personal safety is the reason behind the officer's entering the suspect's pocket."). Because there was evidence in this case that the officer was concerned for her safety and did not know if the object was a weapon, the trial court correctly analyzed the officer's actions under the *Terry* rationale.

## VII

[¶ 17] After reviewing the record in this case, we conclude there is sufficient competent evidence to support the trial court's findings, the trial court's decision is not contrary to the manifest weight of the evidence, and the trial court's decision is consistent with applicable law. Therefore, we affirm the trial court's order denying

suppression of evidence and the final criminal judgment.

[¶ 18] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.