Filed 9/15/16 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2016 ND 187

State of North Dakota, Plaintiff and Appellee

v.

Deven James Schmidt, Defendant and Appellant

Nos. 20150277-20150278

Appeals from the District Court of Burleigh County, South Central Judicial District, the Honorable Sonna M. Anderson, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Tessa M. Vaagen, Assistant State’s Attorney, Burleigh County State’s Attorney, 514 E. Thayer Ave., Bismarck, ND 58501, for plaintiff and appellee.

Danny L. Herbel, The Regency Business Center, 3333 E. Broadway Ave., Ste. 1205, Bismarck, ND 58501, for defendant and appellant.

State v. Schmidt

Nos. 20150277-20150278

McEvers, Justice.

[¶1] In consolidated appeals, Deven Schmidt appeals from district court orders deferring imposition of sentence after he conditionally pled guilty to possession of drug paraphernalia and conspiracy to deliver a controlled substance.  Schmidt argues the district court erred in denying his motions to suppress evidence he claims was obtained in violation of his rights against unreasonable searches and seizures.  We affirm, concluding the district court properly denied Schmidt’s motion to suppress evidence.

I

[¶2] In March 2014, a law officer served a misdemeanor bench warrant on Devin Lavallie, Deven Schmidt’s roommate.  Schmidt answered the door and informed the officer that Lavallie was sleeping inside the residence.  The officer followed Schmidt inside the residence to Lavallie’s bedroom, while another officer remained at the door.  Schmidt went into his bedroom and closed the door while the officer executed the bench warrant on Lavallie.  During Lavallie’s arrest, the officer observed drug paraphernalia in plain view in Lavallie’s bedroom.  The officer placed Lavallie under arrest, moved him into the living room, and handcuffed him.  The officer testified he returned to Schmidt’s bedroom, entered the room, handcuffed Schmidt, and took him to the living room for the safety of those present.  The officer informed Schmidt he was being detained until officers could figure out what was going on.  The officer then observed drug paraphernalia in the living room and contacted the Task Force for assistance.

[¶3] The officer requested and obtained written and verbal consent from Schmidt and Lavallie to search the residence.  After obtaining written consent to search the residence, the officer found paraphernalia in Schmidt’s bedroom.

[¶4] The State charged Schmidt with possession of drug paraphernalia.  Schmidt moved to suppress evidence in connection with the charge, alleging the officer did not have authority or consent to enter the residence to execute the bench warrant.  The district court suppressed evidence obtained from the search, and the State appealed.

[¶5] During the pendency of the appeal, the State charged Schmidt with conspiracy to deliver a controlled substance.  This Court reversed the district court’s suppression order in 
State v. Schmidt
, 2015 ND 134, ¶ 11, 864 N.W.2d 265 (“Schmidt I”), concluding the officer, having a reasonable belief that Lavallie was inside, had legal authority under the misdemeanor bench warrant to enter the residence to execute the warrant, and we remanded for additional proceedings.

[¶6] On remand, Schmidt moved to suppress evidence in connection with both charges. Schmidt argued the officer violated his Fourth Amendment right against unreasonable searches and seizures by opening his bedroom door, removing him, and moving him to the livingroom.  Schmidt also argued his consent to search the residence was coerced.  The district court denied Schmidt’s motion to suppress.  Schmidt entered conditional guilty pleas to both charges, reserving his right to appeal the district court’s denial of his motions to suppress the evidence seized.  The district court entered an order deferring imposition of sentence on each charge.  Schmidt appealed from both orders deferring imposition of sentence.

II

[¶7] In 
Schmidt I
, we outlined our standard for reviewing a district court’s determination on a motion to suppress evidence:

When reviewing a district court’s ruling on a motion to suppress evidence, this Court defers to a trial court’s findings of fact, and conflicts in testimony are resolved in favor of affirmance because we recognize the trial court is in a superior position to assess the credibility of witnesses and weigh evidence.  
State v. Gasal
, 2015 ND 43, ¶ 6, 859 N.W.2d 914.  “A district court’s findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
State v. DeCoteau
, 1999 ND 77, ¶ 6, 592 N.W.2d 579.  “Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.”  
State v. Graf
, 2006 ND 196, ¶ 7, 721 N.W.2d 381.

2015 ND 134, ¶ 5, 864 N.W.2d 265.

[¶8] “The Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures.”  
State v. Gagnon
, 2012 ND 198, ¶ 8, 821 N.W.2d 373.  A person alleging a Fourth Amendment violation has an initial burden of establishing a prima facie case of an illegal search or seizure.  
State v. Lanctot
, 1998 ND 216, ¶ 8, 587 N.W.2d 568; 
City of Fargo v. Sivertson
, 1997 ND 204, ¶ 6, 571 N.W.2d 137.  “However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions.”  
Sivertson
, at ¶ 6.  “The movant initially has the burden to make specific allegations of illegality and to produce evidence to persuade the court the evidence should be suppressed.”  
State v. Pogue
, 2015 ND 211, ¶ 10, 868 N.W.2d 522 (citing 
State v. Glaesman
, 545 N.W.2d 178, 182 n.1 (N.D. 1996).  Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law.  
State v. Uran
, 2008 ND 223, ¶ 5, 758 N.W.2d 727.

A

[¶9] On appeal, Schmidt argues his constitutional right against unreasonable searches and seizures was violated; therefore, the district court erred by not suppressing all evidence acquired after the officer detained Schmidt.  Specifically, Schmidt argues the officer illegally seized him by ordering him out of the room, handcuffing him, and transporting him to the living room.

[¶10] “To stop a person for investigative purposes, an officer must have an articulable and reasonable suspicion that a law has been or is being violated.”  
State v. Parizek
, 2004 ND 78, ¶ 9, 678 N.W.2d 154.  “In determining whether an investigative stop is valid, we use an objective standard and look to the totality of the circumstances.”  
Id.
  “The question is whether a reasonable person in the officer’s position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.”  
Id.

[¶11] Schmidt relies on 
Maryland v. Buie
, 494 U.S. 325, 335 (1990), arguing the officer was required to leave immediately after locating Lavallie.  In 
Buie
, the United States Supreme Court emphasized that:

[A] protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found.  The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and 
in any event no longer than it takes to complete the arrest and depart the premises
.

494 U.S. at 335 (footnote omitted) (emphasis added).  Schmidt’s reliance on 
Buie
 is misplaced.  The district court did not rely on the protective sweep analysis of 
Buie
 to justify his detention.  Rather, the district court stated Schmidt was detained and handcuffed for officer safety after evidence of illegal activity was discovered.  “Under the Fourth Amendment of the United States Constitution, police may, in appropriate circumstances and in an appropriate manner, detain an individual for investigative purposes when there is no probable cause to make an arrest if a reasonable and articulable suspicion exists that criminal activity is afoot.”  
Anderson v. N.D. Dept. of Transp.
, 2005 ND 97, ¶ 8, 696 N.W.2d 918 (citing 
Terry v. Ohio
, 392 U.S. 1 (1968)).

[¶12] The parties do not dispute the officer was lawfully in a constitutionally protected area while executing the arrest warrant and observed drug paraphernalia in plain view.  
See
 
Schmidt
, 2015 ND 134, ¶ 11, 864 N.W.2d 265 (concluding that a misdemeanor bench warrant provides law enforcement the authority to enter a residence of the person named in the warrant in order to execute the warrant); 
see also
 
Gagnon
, 2012 ND 198, ¶ 12, 821 N.W.2d 373 (“The ‘plain view’ doctrine only applies when an officer is legitimately in a constitutionally protected area.”). “This Court has recognized that police officers may ‘freeze’ a situation and conduct a limited investigative stop of persons present at the scene of a recently committed crime without violating the Fourth Amendment.”  
Parizek
, 2004 ND 78, ¶ 10, 678 N.W.2d 154; 
see also
 
City of Devils Lake v. Lawrence
, 2002 ND 31, ¶ 11, 639 N.W.2d 466 (discussing the limited authority of law enforcement to freeze the scene of a crime in order to investigate individuals who reasonably may be involved in the criminal activity).  Nevertheless, relying on 
State v. Torkelsen
 and 
City of Fargo v. Wonder
, Schmidt contends his mere presence at the residence was insufficient for the officer to formulate reasonable suspicion justifying his detention.  
See
 
Torkelsen
, 2006 ND 152, ¶ 15, 718 N.W.2d 22 (“[I]t is axiomatic that presence at or near the scene of a crime, without more, does not give rise to a reasonable suspicion of criminal activity.”); 
see also
 
Wonder
, 2002 ND 142, ¶ 23, 651 N.W.2d 665 (“Mere presence at the scene of a crime is not sufficient to support a warrantless search.”).

[¶13] Schmidt’s reliance on 
Torkelsen
 is misguided.  
Torkelsen
 did not involve freezing the scene of a crime.  Rather, in 
Torkelsen
, police officers stopped Torkelsen in his vehicle several hours after he left the crime scene, when there was no reasonable and articulable suspicion that Torkelsen had engaged in criminal activity.  2006 ND 152, ¶¶ 16-17, 718 N.W.2d 22.  Schmidt likewise fails to note the issue addressed in 
Wonder
.  The issue in 
Wonder
 was not freezing the scene of a crime.  In 
Wonder
, partygoers under the age of twenty-one were not allowed to leave the scene where alcohol was present until they would submit to a preliminary breath test.  2002 ND 142, ¶ 22, 651 N.W.2d 665.  Unlawful detention was not raised on appeal.  The “mere presence” reference in 
Wonder
 was used only to determine whether officers had “particularized suspicion or probable cause” to believe Wonder had committed a crime.  
Id.
 at ¶¶ 23-24.  Here, the presence of drug paraphernalia in plain view in the apartment put the officers on notice of illegal drug activity.

[¶14] In determining the officer did not violate Schmidt’s Fourth Amendment rights, the district court found:

Schmidt argues that after law enforcement arrested Lavallie, they should have simply left the home with Lavallie.  Schmidt seems to argue that the officers had no right to act on any of their observations while in the home.  Had the officers not discovered drug paraphernalia in plain view in Lavallie’s bedroom while law enforcement was executing the arrest warrant, Schmidt’s argument might have merit, however, upon observation of the drug paraphernalia in plain view in Lavallie’s bedroom, the game changed.  The officers then had a reasonable and articulable suspicion that there was illegal activity occurring in the apartment and officers were entitled to further investigate.

Schmidt argues that law enforcement had no right to search Schmidt’s bedroom prior to seizing him.  There is no evidence in the record that the officers searched Schmidt’s bedroom or any other location in the apartment prior to Lavallie and Schmidt giving written consent to do so.  There is no evidence that the officers “rummaged at will” through the home looking for evidence prior to obtaining permission to search. . . .  [The officer] testified that he went to Schmidt’s bedroom, secured Schmidt and brought Schmidt out to the living room. [The officer] stated that they only began the search of the home after written consent was obtained.  There is no evidence to support Schmidt’s claim of an illegal search of his bedroom.

Schmidt argues that law enforcement had no grounds to seize and detain him without a warrant.  Schmidt argues that he was illegally seized simply because he was merely present in the vicinity of illegal paraphernalia.  [The officer] testified that he handcuffed Schmidt and told Schmidt he was being detained but not arrested.  It is undisputed that Schmidt was not free to leave the apartment while he was detained.

. . . Schmidt was not “merely present” at the apartment, Schmidt lived there.  He had access to the home, his possessions were there.  The officers had a reasonable and articulable suspicion that illegal activities were occurring in the home.  That suspicion provided the basis to seize and detain Schmidt because he was a resident of the apartment.

. . . [The officer] knew where Schmidt was and he went to get Schmidt in the bedroom and then brought Schmidt back to the living room.  There is no evidence in the record that [the officer] took the opportunity to look for more evidence of illegal activities while securing Schmidt.  Nothing in the record shows that the officers committed a sweep of the apartment looking for unidentified persons.

. . . The Court . . . found the fact of being handcuffed during the detention was for officer safety and does not violate Schmidt’s Fourth Amendment Rights.

. . . 

. . . In this case, the officers made a legal entry into the home.  The officers observed contraband which gave them a reasonable and articulable suspicion that illegal activity was occurring in the home.  The officers legally arrested Lavallie and legally detained Schmidt.  The officers did not search the home prior to obtaining consent.

[¶15] The United States Supreme Court has held that officers executing a search warrant have authority to “detain the occupants of the premises while a proper search is conducted.”  
Michigan v. Summers
, 452 U.S. 692, 705 (1981).  The rule was further extended in 
Muehler v. Mena
, stating “[a]n officer’s authority to detain incident to arrest is categorical; it does not depend on the ‘quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.’”  544 U.S. 93, 98 (2005) (quoting 
Summers
, 452 U.S. at 705 n.19).  In explaining the categorical rule, the Court discussed the appropriateness of detentions, noting the character of the additional detention being slight and the justification for the detention being substantial.  
Muehler
, 544 U.S. at 98.  The Court also noted “three legitimate law enforcement interests that provide substantial justification for detaining an occupant:  ‘preventing flight in the event that incriminating evidence is found’; ‘minimizing the risk of harm to the officers’; and facilitating ‘the orderly completion of the search,’ as detainees’ ‘self-interest may induce them to open locked doors or locked containers to avoid the use of force.’”  
Id.
  (quoting 
Summers
, 452 U.S. at 702-703).

[¶16] The issue of whether such a categorical rule should apply to arrest warrants has not been answered definitively.  
See
 
Gomez v. United States
, 601 Fed.Appx. 841, 847 (11th Cir. 2015) (unpublished) (discussing circuit courts that have applied the exception to the execution of arrest warrants).  We need not address whether law enforcement may categorically detain occupants of a residence when executing an arrest warrant.  Based on the totality of the circumstances here, law enforcement had some of the same concerns expressed in 
Summers
.  
See
 
Summers
, 452 U.S. at 702-

703.  The officer testified the detention was based on the evidence found, minimizing the risk to both the officers and the occupants.  As noted in 
Summers
, where there was no special danger to the police suggested by the evidence in the record, searches involving narcotics may give rise to sudden violence or frantic efforts to conceal or destroy evidence.  
See
 
id.
  Here, the evidence found in plain view was drug paraphernalia, which invokes similar concerns.  In 
Summers
, the Supreme Court also stated the risk to police and occupants is minimized if officers routinely exercise unquestioned command of the situation.  
Id.
  While 
Summers
 discussed detention based on a neutral detached magistrate’s determination there was probable cause someone on the premises was committing a crime, here, it is undisputed that there was probable cause someone was committing a crime when the police found drug paraphernalia in plain view.

[¶17] The officer testified he observed, based on his training and experience, drug paraphernalia in Lavallie’s bedroom in plain view.  The officer further testified he detained Schmidt due to the evidence in the home.   
See
 
State v. Deviley
, 2011 ND 182, ¶ 13, 803 N.W.2d 561 (officers may rely on their training and experience to draw inferences and deductions that may elude a layperson); 
see also
 
State v. Dymowski
, 458 N.W.2d 490, 500 (N.D. 1990) (discussing factors to be considered for determining constructive possession of controlled substances, including presence or proximity to controlled substance and presence of controlled substance in the person’s premises).  The officer had reason to believe Schmidt was a resident of the apartment.  Schmidt opened the door, led the officer to Lavallie’s bedroom, and retreated to his own room while the officer executed the arrest warrant.  Upon observing evidence of a new crime within the residence in plain view, the officer formulated probable cause of criminal activity, more than the reasonable suspicion necessary to freeze the scene, and therefore acted reasonably in freezing the scene for security of the officers and others present and to further investigate.  Further, the officer’s use of handcuffs and moving Schmidt to a common room of the residence were reasonable officer safety precautions.  
See
 
Muehler
, 544 U.S. at 99 (discussing the permissible use of handcuffs as a marginally intrusive means of physical coercion to effectuate an investigatory stop).

[¶18] We agree with the district court that Schmidt was not “merely present” at the scene of the crime.  Schmidt lived in and had access to the residence.  The intrusion into Schmidt’s bedroom was minimal.  According to testimony, the officer knew Schmidt was in his bedroom, knocked on Schmidt’s bedroom door, and demanded he come out.  The officer then entered Schmidt’s bedroom, immediately informed Schmidt he was being detained, handcuffed him, and transported him to the living room.  There is no evidence the officer conducted a separate search for contraband while detaining Schmidt.  The record reflects the officer did nothing more than detain Schmidt in his bedroom.

[¶19] The officer did not violate Schmidt’s Fourth Amendment rights because under the totality of the circumstances the entry into Schmidt’s bedroom and seizure of his person was reasonable.  
See
 
City of Bismarck v. Uhden
, 513 N.W.2d 373, 376 (N.D. 1994) (quoting 
Terry
, 392 U.S. at 16) (“[T]he Fourth Amendment does not forbid all searches and seizures, but unreasonable searches and seizures.”) (internal quotations marks omitted).  The district court’s findings are supported by sufficient competent evidence.  We conclude, under the totality of the circumstances, the officer had a reasonable and articulable suspicion that Schmidt was engaged in unlawful activity and was justified in temporarily detaining him to freeze the scene for further investigation.

B

[¶20] Schmidt argues the officer illegally searched his bedroom by opening the door and that all evidence acquired after the alleged illegal search must be suppressed.  “A search occurs when the government intrudes upon an individual’s reasonable expectation of privacy.”  
Schmidt I
, at ¶ 6.  Schmidt’s argument that the drug paraphernalia found in his bedroom must be suppressed because the entry into his bedroom was an illegal search is without merit.  We have already concluded that the officer lawfully detained Schmidt.  The district court found the officer discovered the drug paraphernalia in Schmidt’s bedroom after Schmidt signed the written consent form.  The district court’s findings that the officer’s entry into Schmidt’s bedroom was to secure Schmidt, and the officer did not use that opportunity to look for evidence of illegal activity is supported by the record.  We conclude suppression is not warranted because the officer discovered drug paraphernalia after legally detaining Schmidt and receiving his consent.

III

[¶21] Schmidt argues the drug paraphernalia found in his bedroom should be suppressed because his written consent to search was not voluntarily made.

[¶22] “Warrantless searches inside a person’s home are presumptively unreasonable.”  
Mitzel
, 2004 ND 157, ¶ 11, 685 N.W.2d 120.  However, a warrantless search of a home is not unreasonable if it falls under a recognized exception to the warrant requirement.  
Id.
  “The burden is on the government to show a warrantless search is within an exception to the warrant requirement.”  
City of Jamestown v. Dardis
, 2000 ND 186, ¶ 9, 618 N.W.2d 495.  Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule.  
Mitzel
, 2004 ND 157, ¶ 12, 685 N.W.2d 120.

[¶23] “‘Consent is one exception to the warrant requirement,’ but the consent must be voluntary and the State has the burden of proof.”  
Torkelsen
, 2008 ND 141, ¶ 21, 752 N.W.2d 640 (quoting 
Graf
, 2006 ND 196, ¶ 9, 721 N.W.2d 381).  “A district court must ‘determine whether the consent was voluntary under the totality of the circumstances.’”  
State v. Hayes
, 2012 ND 9, ¶ 38, 809 N.W.2d 309 (quoting 
State v. Avila
, 1997 ND 142, ¶ 16, 566 N.W.2d 410).  “Whether an officer has consent is a question of fact.”  
State v. Albaugh
, 2007 ND 86, ¶ 21, 732 N.W.2d 712.  “A trial court’s findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
Mitzel
, at ¶ 10.

[¶24] In 
Torkelsen
, we articulated the considerations for determining whether consent is voluntary:

Consent is voluntary when it is the product of a free and unconstrained choice and not the product of duress or coercion, and to decide whether consent is voluntary we consider:

“(1) the characteristics and condition of the accused at the time of the consent, including age, sex, race, education level, physical or mental condition, and prior experience with police; and (2) the details of the setting in which the consent was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused’s powers of resistence or self control.”

2008 ND 141, ¶ 21, 752 N.W.2d 640 (quoting 
State v. Haibeck
, 2004 ND 163, ¶ 21, 685 N.W.2d 512) (quotation marks omitted).  “Because the district court is in a superior position to judge credibility and weight, we show great deference to the court’s determination of voluntariness.”  
Torkelsen
, 2008 ND 141, ¶ 21, 752 N.W.2d 640 (quotation marks omitted).

[¶25] Schmidt concedes he signed the written consent to search form.  While Schmidt signed the consent to search form, Schmidt’s signature, standing alone, is not dispositive of whether his consent was voluntary.  
See
 
Mitzel
, 2004 ND 157, ¶¶ 27, 30, 685 N.W.2d 120 (reversing a district court’s finding of voluntary consent for basing its decision solely on written consent and failing to consider the totality of the circumstances).

[¶26] As to the characteristics and condition of the accused, the district court recognized that Schmidt was nervous and stressed at the time.  The district court also found that Schmidt was calm and was not belligerent or combative.  The record also reflects that Schmidt was cooperative with the officers, offering unsolicited information about a smoking device when one officer cautioned the other officer on safely handling the paraphernalia.

[¶27] In regard to the details of the setting in which the consent was obtained, in its corrected order denying Schmidt’s motion for reconsideration, the district court recognized that Schmidt was handcuffed and not free to leave the apartment while he was detained.  The district court found Schmidt voluntarily provided his written consent and it was not the product of coercion:

Schmidt argues that his consent was not valid because he was stressed and nervous due to the fact that he was being detained at the time he gave consent, and the fact that he was handcuffed and the fact that he was not read his Miranda warning or allowed to consult with an attorney prior to signing the consent is sufficient to support a conclusion that the consent was coerced.

While 
Miranda
 warnings are a factor to consider under the voluntariness test, 
United States v. Payne
, 119 F.3d 637, 643-44 (8th Cir. 1997) the lack of a 
Miranda
 warning, by itself, does not invalidate a consent to search.  
United States v. Lee
, 356 F.3d 831, 834 (8th Cir. 2003).  The Court finds that the failure to read Schmidt his Miranda rights prior to asking for his consent to search is not controlling.  While Schmidt may have legitimately been nervous and stressed at the time, there is no evidence that the officers were belligerent or intimidating.  The record does not show that Schmidt had ever asked to consult with an attorney prior to signing the consent form.

. . . In this case, the officers made a legal entry into the home.  The officers observed contraband which gave them a reasonable and articulable suspicion that illegal activity was occurring in the home.  The officers legally arrested Lavallie and legally detained Schmidt.  The officers did not search the home prior to obtaining consent.  Neither Schmidt nor Lavallie were belligerent or combative, but were calm.  There is no evidence that the officers were belligerent or combative, or that the officers intentionally intimidated or misled Schmidt about the consent form.  Neither Schmidt or Lavallie asked to speak to an attorney.  When asked to consent to the search, they did so and signed the document.  The Court finds that the circumstances presented DO NOT support a finding that the defendants were coerced into signing the consent form.

The district court further found in its original order denying Schmidt’s motion to suppress:

Both Defendants signed the consent form, which would be affirmative conduct consistent with giving consent.  Without a revocation of that consent, the officers would be reasonably justified in acting on that consent.

. . . The Defendants understood what was asked of them when they signed the consent form, and while they were probably unhappy about the situation they found themselves facing, the defendants were not coerced into giving consent.

The Court has considered the testimony of the defendants and [the officer], and the arguments of counsel.  The evidence supports a finding that both of the defendants consented to the search and the search did not violate the defendants’ Fourth Amendment Rights.

[¶28] The record reflects Schmidt was in police custody at the time he signed the written consent to search the residence.  Schmidt was handcuffed in the living room of his apartment and informed that he was being detained, but not under arrest.  Whether a suspect is in police custody is not determinative of whether consent is voluntary.  
See
 
State v. Lange
, 255 N.W.2d 59, 64 (N.D. 1977) (“Voluntariness is always a question to be determined from all circumstances, whether the subject is, or is not, in custody.”).  Schmidt testified he felt like he did not have “much of a choice” whether to consent to the search because four officers were at the residence, three of whom were armed.  However, the mere presence of armed officers is not necessarily evidence of coercion.  
See
 
United States v. Drayton
, 536 U.S. 194, 205 (2002) (recognizing that most officers are armed, therefore, the presence of a holstered firearm is unlikely to be coercive absent active brandishing of the weapon); 
State v. Page
, 277 N.W.2d 112, 116-17 (N.D. 1979) (“The fact that there were armed policemen outside the door . . . is not proof that the officers used coercive tactics.”).  While the officer did not advise Schmidt of his 
Miranda
 rights, no argument has been made that a custodial interrogation took place.

[¶29] The record reflects Schmidt testified he did not read the consent form, but the officer told him what it was.  Schmidt did not argue he did not understand the form or that he should have been advised of his right to refuse.  There is no presumption of invalidity that attaches by failing to advise of a right to refuse to cooperate.  
See Drayton
, 536 U.S. at 206 (rejecting “the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search”).

[¶30] Schmidt also contends his consent was coerced because the officer threatened to “tear [his] place apart” if he did not sign the consent form.  The State did not offer any evidence to rebut Schmidt’s characterization of the officer’s alleged statement.  The district court found no evidence of a threat or coercion that would rise to the level of invalidating Schmidt’s written consent.  This Court has addressed the use of verbal threats made in attempt to obtain consent to search from a suspect.  
See
 
State v. Larson
, 343 N.W.2d 361, 364-65 (N.D. 1984) (concluding a statement made by a game warden that if the suspect did not show him where the ducks were then the warden would bring in six more wardens and four dogs constituted an “impermissible ultimatum[] . . . abhorrent to the principles of the [F]ourth [A]mendment.”).  In 
Larson
, game wardens questioned the defendant for over two hours, during which time he gave no indication that he intended to consent to a search.  
Id.
 at 365.  Only after the warden threatened a more intensive search did the defendant consent.  
Id.
  Another game warden testified and corroborated the threatening statement was made to the defendant.  
Id.
 at 362 n.1.

[¶31] The case at hand is distinguishable from 
Larson
.  Unlike the defendant in 
Larson
, Schmidt was only detained for a short time before signing the consent form, and there is no evidence he ever resisted signing the consent form.  The record reflects less than thirty minutes passed from when the officers arrived at the residence to when Schmidt signed the consent to search.  Lavallie testified it was “maybe [] ten minutes” from the time he was arrested and “after that we had signed that consent to search form.”  In 
Larson
, another warden corroborated that a threat was made.  Here, while both Schmidt and Lavallie testified the officers would tear the place apart, it is for the district court to weigh the evidence and determine the credibility of the witnesses.  
See
 
State v. Discoe
, 334 N.W.2d 466, 468 (N.D. 1983) (recognizing that a district court is in a superior position to determine the weight to give a witness’s testimony).  The district court did not specifically address credibility on Schmidt’s testimony about the officer’s alleged threat, but the district court later stated, “[t]he Court finds [the officer’s] testimony to be more credible and believes that Schmidt allowed [the officer] to take possession of and look at the phone.”  The district court also considered Schmidt’s demeanor during his detention as being calm and not belligerent.

[¶32] Given our deferential standard of review of a district court’s finding of voluntary consent, based on the totality of the circumstances, we conclude sufficient competent evidence supports the district court’s finding, and its finding is not contrary to the manifest weight of the evidence.

IV

[¶33] We do not address Schmidt’s remaining arguments because they are unnecessary to this decision or are without merit.  We conclude sufficient competent evidence supports the district court’s denial of Schmidt’s motion to suppress, and its decision is not contrary to the manifest weight of the evidence.  We affirm the district court’s orders deferring imposition of sentence.

[¶34] Lisa Fair McEvers

Carol Ronning Kapsner

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

I concur in the result.

Dale Sandstrom.