2004 ND 115

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Randy Brian HIGGINS, Defendant and Appellee.**

No. 20030320.

Supreme Court of North Dakota.

June 3, 2004.

Brandi Sasse Russell, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellant.

Justin D. Roness (argued), Thomas A. Dickson, and Timothy Q. Purdon, Dickson & Purdon, Bismarck, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶1] The State appealed a district court order denying its motion to amend a criminal complaint, granting Randy Brian Higgins's motion to suppress evidence, and granting Higgins's motion to dismiss. We reverse and remand.

I

[¶2] At 10:30 p.m. on July 12, 2003, Higgins received a citation alleging he committed "the following offense: *Operate a motorboat while under the influence* in violation of Sec. *20.1–13–07* NDCC ... in violation of Governor's *boating* proclamation."

[¶3] Higgins filed a motion to dismiss or suppress evidence. Higgins asserted in his supporting brief, among other things: (1) "Game & Fish had recently adopted a policy of stopping every boat which had it[s] 'docking lights' on after sundown ... as a pretense to board any and all boats after sundown;" (2) "North Dakota Game & Fish has adopted the Coast Guard regulation" which, "[f]or purposes of this appeal ... requires that all boats operating after sunset have red and green bow lights visible for one mile;" (3) "[s]ometime after

sundown, Game & Fish Supervisor Knapp radioed Game & Fish Officer Lundstrom and told her to stop the pontoon ... because it had its docking lights on;" (4) "Warden Lundstrom followed her supervisor's orders and stopped the pontoon;" (5) "[u]pon spotting an open container (which is legal on a boat), Warden Lundstrom then requested that Mr. Higgins perform several field sobriety tests;" and (6) "[f]ollowing this, Mr. Higgins was arrested for Operating a Motorboat Under the Influence of Alcoholic Beverages. *See,* N.D.C.C. § 20.1–13–07." Higgins argued, among other things: (1) he "cannot be convicted of operating a motorboat under the influence of alcoholic beverages," because N.D.C.C. § 20.1–13–07(2) "does not mention 'alcohol beverages;'" and (2) there was no reasonable and articulable suspicion to stop Higgins's pontoon.

[¶ 4]  The State moved to amend the complaint to read, in part:

> on or about the 12th day of July, 2003, ... Randy Higgins, did commit the crime of Boating While Intoxicated or Under the Influence, committed as follows:
>
> The defendant operated a motor boat or vessel while intoxicated or under the influence of a narcotic drug, barbitu[r]ate, or marijuana;
>
> N.D.C.C. 20.1–13–07
>
> 12.1–32–01(6)    CLASS B MISDEMEANOR
>
> this contrary to the statute in such cases made and provided and against the peace and dignity of the State of North Dakota.

After a hearing, the trial court issued an order on the motions:

1. The State's Motion to Amend the Criminal Complaint is denied;

2. The Defendant's Motion to Suppress is granted on the ground that there

was not a reasonable and articulable suspicion to stop the boat; and

3. The Defendant's Motion to Dismiss is granted on the ground that there was insufficient evidence to believe that N.D.C.C. § 20.1–13–07(2) was violated because the statute makes no reference to "alcoholic beverages" as being an element of an alleged crime.

## II

■ [¶ 5]  On appeal, the State contends the trial court erred in denying its motion to amend the complaint. Uniform complaints, like the one issued in this case, are generally not drawn by attorneys and are often hastily drawn. *See State v. Schwab,* 2003 ND 119, ¶ 9, 665 N.W.2d 52. Higgins concedes that "[a]mendments to criminal complaints are routinely granted," but asserts "it is difficult to understand why the State is seeking an amendment to charge a crime which never happened," and "[t]he critical element of [ ] alcoholic beverages is still missing from the statute." Under N.D.R.Crim.P. 3(b), allowing amendment of a complaint is within the trial court's discretion. *Schwab,* at ¶ 9. We discern no possibility of prejudice to Higgins from amending the complaint, and we conclude the trial court abused its discretion in denying the State's motion to amend the complaint.

## III

[¶ 6]  The State contends the trial court erred in granting Higgins's motion to suppress on the ground that there was not a reasonable and articulable suspicion to stop the boat.

■ [¶ 7]  "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).  To legally stop a vehicle, a law enforcement

officer must have a reasonable and articulable suspicion that a motorist has violated or is violating the law. *State v. Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538. In determining the validity of a stop, we use an objective test and look at the totality of the circumstances. *State v. Parizek*, 2004 ND 78, ¶ 9, 678 N.W.2d 154. "The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *Id.* Investigatory stops have been upheld in cases in which the stopping officer has acted on a tip from another officer or an informant, which was corroborated by the stopping officer's own observations. *Kenner*, at ¶ 12. On appeal from a trial court's decision on a suppression motion, we defer to the trial court's findings of fact and resolve evidentiary conflicts in favor of affirmance, but "[q]uestions of law, such as the ultimate conclusion of whether the facts support a reasonable and articulable suspicion, are fully reviewable." *Parizek*, at ¶ 7.

[¶ 8]    Section 30–05–01–02(6), N.D. Admin. Code, provides, in part:

> When operating between sunset and sunrise, all motorboats under twenty-six feet [6.8 meters] in length shall exhibit a twenty-point [225 degree] combination red and green bowlight visible for one mile [1.6 kilometers], ten points [112.5 degrees] to the left of the centerline of the boat being red, the ten points [112.5 degrees] to the right of the centerline being green.

The North Dakota Game and Fish Department's 2002–2004 North Dakota Boat and Water Safety Guide states, in part, the following lighting requirement for boats under 26 feet in length being operated between sunset and sunrise:

> Motorboats operating between sunset and sunrise shall exhibit a twenty point (225 degree) combination red and green bow light, visible for one mile, the left side being red, the right side being green.

*See also* the inland navigation rules in 33 U.S.C.A. § 2021 (defining "sidelights" as "a green light on the starboard side and a red light on the port side each showing an unbroken light over an arc of the horizon of 112.5 degrees and so fixed as to show the light from right ahead to 22.5 degrees abaft the beam on its respective side"); 33 U.S.C.A. § 2022 (requiring a sidelight to be visible for a minimum of one mile); and 33 U.S.C.A. § 2020 ("The Rules concerning lights shall be complied with from sunset to sunrise, and during such times no other lights shall be exhibited, except such lights as . . . do not impair" the visibility of lights specified in the rules.).

[¶ 9]    Jackie Lundstrom, the game warden who stopped and arrested Higgins while he was operating a boat on the Missouri River after sundown, testified on direct examination: (1) "[w]e stopped the boat because the red and green navigational lights with those docking lights on are not visible for the one mile required;" (2) the boat was being operated with docking lights on; (3) "in this particular case, [she] couldn't see [the red and green navigational lights] within the one mile marker;" and (4) when they stopped the boat, "[w]e explained that the [docking] lights were blocking the red and green navigation lights." On cross-examination, Lundstrom testified: (1) "it is the policy at Game and Fish to stop every boat that has its docking lights on after sunset . . . if they're in the main channel;" (2) she was about one-half mile directly in front of the boat when she observed it with its docking lights on; (3) she has never "issued a citation to anybody for driving their boat after dark with the docking lights on;" (4) Officer Knapp, who was on shore, ordered her to

stop the boat because its docking lights were on. Lundstrom also testified (1) she had no probable cause to arrest Higgins for being under the influence of drugs; (2) she did not arrest Higgins for boating under the influence of drugs; and (3) in her opinion, Higgins was intoxicated by alcoholic beverages.

[¶ 10] Lundstrom's observation, from a distance of one-half mile directly in front of Higgins's boat, that the red and green navigational lights were not visible provided her with a reasonable and articulable suspicion that Higgins was in violation of a regulation requiring that a person operating a boat between sunset and sunrise exhibit a "red and green bowlight visible for one mile," justifying her in stopping the boat.

[¶ 11] Because Lundstrom had a reasonable and articulable suspicion to stop Higgins's boat, we need not address his assertion that "Game & Fish had recently adopted a policy of stopping every boat which had it[s] 'docking lights' on after sundown . . . as a pretense to board any and all boats after sundown." We note that we have held that "[t]raffic violations provide a proper basis for stops, even if pretextual, and evidence discovered during such stops is admissible." *State v. Loh,* 2000 ND 188, ¶ 10, 618 N.W.2d 477. For the same reason, we need not decide the propriety of stopping all boats with lights other than navigational lights on after sunset, as distinguished from boats whose navigational lights are not visible for the required distance.

## IV

[¶ 12] Section 20.1–13–07(2), N.D.C.C., which Higgins was charged with violating, provides, in part: "No person may operate any motorboat or vessel . . . while intoxicated or under the influence of any narcotic drug, barbiturate, or marijuana." The

State contends the trial court erred in dismissing the complaint on the ground that N.D.C.C. § 20.1–13–07(2) does not refer to alcoholic beverages.

[¶ 13] "Construction of statutes is a question of law and therefore fully reviewable." *State v. Beciraj,* 2003 ND 173, ¶ 14, 671 N.W.2d 250. "Criminal statutes are strictly construed in favor of the defendant and against the government." *Id.* Our primary objective in construing a statute is to ascertain legislative intent by looking at the language of the statute itself. If the meaning of a penal statute is obscure, we will consider legislative intent in determining its meaning. *State v. Fargo Bottling Works,* 19 N.D. 396, 124 N.W. 387 (1910) (holding malt liquor included in term "retaining the alcoholic principle"). Furthermore, while an ambiguous statute should be construed in favor of the defendant, we do not adopt a construction that would produce an absurd result. *State v. Larson,* 479 N.W.2d 472 (N.D.1992) (holding defendant's proposed construction of the term "driving under the influence of alcohol" would produce an absurd result). We presume the legislature acts with a purpose and does not perform useless acts. *Scott v. North Dakota Workers Compensation Bureau,* 1998 ND 221, ¶ 15, 587 N.W.2d 153. " 'If possible, we construe statutes on the same subject to harmonize them to give full force and effect to the Legislature's intent.' " *Gratech Co., Ltd. v. Wold Eng'g, P.C.,* 2003 ND 200, ¶ 12, 672 N.W.2d 672 (quoting *Dennison v. North Dakota Dep't of Human Servs.,* 2002 ND 39, ¶ 10, 640 N.W.2d 447). "Whenever fairly possible, we construe statutes relating to the same subject matter to give effect to both." *Dimond v. State ex rel. St. Bd. of Higher Educ.,* 2001 ND 208, ¶ 8, 637 N.W.2d 692.

[¶ 14] Section 20.1–13.1–01, N.D.C.C., provides, in part:

Any person who operates a motorboat or vessel in this state is deemed to have given consent, and shall consent . . . to a chemical test, or tests . . . for the purpose of determining the alcoholic, other drug, or combination thereof, content of the blood.

Section 20.1–13.1–05, N.D.C.C., provides, in part:

If a person submits to a chemical test under section 20.1–13.1–01 . . . and the test shows that person to have an alcohol, other drug, or a combination thereof concentration of at least ten one-hundredths of one percent by weight at the time of the performance of the test within two hours after the operating of a motorboat or vessel, the following procedures apply:

1. The game warden or law enforcement officer shall immediately issue a statement of intent to prohibit the person from operating a motorboat or vessel. . . .

3. The game warden or law enforcement officer, within five days of issuing the statement of intent, shall forward to the director a certified written report. . . . If the statement was given because of the results of a chemical test, the report must show that the game warden or officer had probable cause to believe the person had been operating a motorboat or vessel while in violation of section 20.1–13–07, that the person was lawfully arrested, that the person was chemically tested under this chapter, and that the results of the test show that the person had an alcohol, other drug, or a combination thereof concentration of at least ten one-hundredths of one percent by weight.

[¶ 15] *Webster's Third New International Dictionary,* p. 1185 (unabridged

1967 ed.), which was current when N.D.C.C. § 20.1–13–07 was enacted, defined "intoxicated" as "being under the marked influence of an intoxicant: DRUNK, INEBRIATED." At page 1185, it defined "intoxicant" as "something that intoxicates: an intoxicating agent; *esp:* an alcoholic drink." It defined "drunk" as "being in a condition caused by alcoholic drink in which control of the faculties is impaired and inhibitions are broken and in later stages of which one tends toward or reaches insensibility" (p. 696). It defined "inebriated" as "exhilarated or confused by or as if by alcohol" (p. 1156). Thus, the plain meaning of intoxicated includes impairment by alcoholic beverages.

[¶ 16] Chapter 20.1–13.1, N.D.C.C., was enacted in 1991 upon passage of S.B. 2039, to provide for implied consent to chemical testing of boat operators. Senator Meyer testified "it is illegal to operate a boat now while you're intoxicated but there isn't anything that allows them to test you." *Hearing on S.B. 2039 Before the Senate Committee on Natural Resources,* 52nd N.D. Legis. Sess. (Feb. 7, 1991). Lloyd Jones, Commissioner of the North Dakota Game and Fish Department, testified: "Right now, we cannot enforce boating while intoxicated and more of the public are realizing this and many are taking advantage," and "[t]he public is aware of the weak law and know they are not required to submit any test so that is getting bad." *Hearing on S.B. 2039 Before the House Committee on Transportation,* 52nd Legis. Sess. (March 7, 1991). Jeff Nelson of the Legislative Council testified: "Under the current law there is no implied consent, so there is no provision for testing. [T]hey cannot force you to submit to a test. They would have to arrest you and charge you with the offense of boating while intoxicated and the arresting officer would bring in the evidence

based on personal observation." *Hearing on S.B. 2039 Before the Conference Committee* (March 9, 1991). At an April 27, 1991, conference committee hearing, Commissioner Jones testified: "The problem with the current law is that it doesn't define intoxication and it doesn't allow testing in the field." In written testimony, the North Dakota Game and Fish Department said:

> Currently we have a law that prohibits operating a boat or vessel while intoxicated or under the influence of drugs. (20.1–13–07(2)). Unfortunately the law does not define what intoxicated is, it does not allow for testing and it does not set penalties. Our Department's position is that the law as written cannot be properly enforced.

▬ [¶ 17] Construing N.D.C.C. § 20.1–13–07(2) in light of the plain, ordinary, and commonly understood meaning of "intoxicated" and in light of N.D.C.C. ch. 20.1–13.1 on the same subject, together with the legislative history of ch. 20.1–13.1, which reveals an evident purpose of creating an implied consent to chemical testing to facilitate prosecutions for boating while intoxicated in violation of N.D.C.C. § 20.1–13–07(2), we conclude that operating a motorboat or vessel while intoxicated through the consumption of alcoholic beverages violates N.D.C.C. § 20.1–13–07(2). We further conclude the trial court erred in dismissing the complaint on the ground that the statute does not specifically refer to alcoholic beverages.

V

[¶ 18] The order is reversed and the matter is remanded for further proceedings in accordance with this opinion.

[¶ 19] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.