2007 ND 42

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Darren Lee BACHMEIER, Defendant and Appellant.**

**No. 20060235.**

Supreme Court of North Dakota.

March 22, 2007.

Mark A. Flagstad (argued), Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Jeffrey L. Sheets (argued), Minot, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Darren Bachmeier appeals from a judgment entered after a jury trial for driving while under the influence and from an order denying his motion to suppress the evidence gathered from a traffic stop. We affirm, concluding the district court did not err by denying Bachmeier's motion to suppress.

I

[¶ 2] Bachmeier was driving home from a rural tavern shortly before 12:50 a.m. A highway patrol trooper saw his vehicle leave Carpio, North Dakota, and travel south on State Highway 28. The trooper was some distance away from Bachmeier's vehicle when the trooper noticed his taillights. The trooper, without observing any traffic violations, believed it statistically likely that a driver on the road after midnight may be intoxicated. To observe Bachmeier's vehicle, the trooper accelerated to at least 80 miles-per-hour in a 65 mile-per-hour zone without activating his emergency lights. Once in a position to see the vehicle, the trooper observed Bachmeier's vehicle weave within its lane, and cross the center and fog lines. The trooper then initiated a traffic stop. The trooper noticed signs of intoxication, so he administered several field sobriety tests. The tests confirmed the trooper's suspicion, and Bachmeier was arrested for driving while under the influence.

[¶ 3] Bachmeier moved to suppress the evidence gathered during the traffic stop. The district court held a suppression hearing, after which it denied Bachmeier's motion. The court held there was a reason-able and articulable basis for the stop after the trooper observed Bachmeier weaving and crossing the center and fog lines. The district court concluded the trooper's speeding was not an appropriate basis for the suppression of the evidence. After a jury trial, Bachmeier was found guilty of driving while under the influence.

II

[¶ 4] The issue on appeal is whether the district court erred by not applying the exclusionary rule, and not suppressing the evidence of Bachmeier's intoxication gathered during the traffic stop. Specifically, Bachmeier argues the district court erred in not suppressing the evidence because the trooper did not have reasonable and articulable suspicion when he began to pursue Bachmeier. The State argues the district court's decision was appropriate.

[¶ 5] The standard for reviewing a district court's decision on a motion to suppress is well established:

We will defer to the [district] court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the [district] court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a [district] court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the [district] court's findings, and if its decision is not contrary to the manifest weight of the evidence.

*State v. Oien*, 2006 ND 138, ¶ 7, 717 N.W.2d 593 (quoting *State v. Linghor*, 2004 ND 224, ¶ 3, 690 N.W.2d 201; *State v. Kitchen*, 1997 ND 241, ¶ 11, 572 N.W.2d 106). "Questions of law, such as the ulti-

mate conclusion of whether the facts support a reasonable and articulable suspicion, are fully reviewable on appeal." *State v. Parizek*, 2004 ND 78, ¶ 7, 678 N.W.2d 154.

### III

[¶ 6] To justify a traffic stop for investigative purposes, a law enforcement officer must have a reasonable and articulable suspicion that the motorist has violated or is violating the law. *Gabel v. N.D. Dep't of Transp.*, 2006 ND 178, ¶ 9, 720 N.W.2d 433; *City of Fargo v. Ovind*, 1998 ND 69, ¶ 8, 575 N.W.2d 901. Determining whether an officer has a reasonable and articulable suspicion is measured by a flexible, fact-specific inquiry. *Gabel*, at ¶ 9. The inquiry cannot readily, or even usefully, be reduced to a neat set of legal rules. *Id.*; *State v. Loh*, 2000 ND 188, ¶ 5, 618 N.W.2d 477. However, "observed traffic violations provide officers with the requisite suspicion for conducting investigatory stops." *Gabel*, at ¶ 9; *accord Loh*, at ¶ 10. Weaving onto the wrong side of the roadway is a traffic violation. *See* N.D.C.C. § 39–10–08(1); *Loh*, at ¶ 7.

[¶ 7] Here, the trooper testified once he was in a position to view Bachmeier's vehicle, he observed the vehicle cross the center and fog lines of a two-lane highway. The trooper's onboard camera captured video images of the vehicle crossing the fog line, corroborating the trooper's testimony. Since the trooper observed Bachmeier violate the traffic law, the district court did not err in concluding the trooper had reasonable and articulable suspicion for the traffic stop.

### IV

[¶ 8] Bachmeier argues the district court should have excluded evidence of his intoxication because the trooper violated the law by speeding. Bachmeier claims the officer could not have formulated the reasonable and articulable suspicion for the traffic stop without violating the law. We conclude the trooper's conduct, traveling in excess of the posted speed limit, does not invoke the exclusionary rule.

### A

[¶ 9] The United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV; *Oien*, 2006 ND 138, ¶ 8, 717 N.W.2d 593. Generally, the exclusionary rule is a judicially created remedy that prevents the government from introducing unlawfully seized evidence against the defendant in a criminal prosecution. *See Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *see also Oien*, at ¶ 8. The exclusionary rule must also be applied to statutory violations but only where the statutory violation is tantamount to a violation of the individual's Fourth Amendment rights. *State v. Utvick*, 2004 ND 36, ¶ 27, 675 N.W.2d 387. Nevertheless, the exclusionary rule is only "designed to safeguard . . . rights generally through its deterrent effect, [and is not] a personal constitutional right of the party aggrieved." *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). "An individual is only entitled to the protection of the exclusionary rule if the individual's . . . Fourth Amendment rights were violated. . . ." *Oien*, at ¶ 8.

[¶ 10] In this case, Bachmeier's Fourth Amendment rights were not violated by the officer's conduct. The trooper had a reasonable and articulable suspicion when the trooper initiated the traffic stop. Bachmeier's interaction with the trooper for Fourth Amendment seizure purposes began when the trooper activated his overhead lights and exerted some au-

thority over him. *State v. Langseth,* 492 N.W.2d 298, 300 (N.D.1992); *see also Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (concluding the Fourth and Fourteenth Amendments were implicated because law enforcement initiated a traffic stop); *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). Bachmeier's constitutional rights were not violated. Further, Bachmeier did not raise any issue of a statutory violation that was so intertwined with his constitutional rights that it is appropriate to apply the exclusionary rule. *See Utvick,* 2004 ND 36, ¶ 27, 675 N.W.2d 387. " 'Our Court will not consider an argument that is not adequately articulated, supported, and briefed.' " *State v. Loughead,* 2007 ND 16, ¶ 10, 726 N.W.2d 859 (quoting *State v. Haibeck,* 2006 ND 100, ¶ 9, 714 N.W.2d 52). Even if he had properly raised the issue, we do not believe a law enforcement officer exceeding the posted speed limit involves a statutory violation so closely related to an individual's constitutional rights that applying the exclusionary rule would be proper. *See Utvick,* at ¶ 27; *see also Hudson v. Michigan,* —— U.S. ——, ——, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006) ("Suppression of evidence [under the exclusionary rule] ... has always been our last resort, not our first impulse.").

[¶ 11] We conclude Bachmeier's rights were not violated by the trooper's conduct, the exclusionary rule is inapplicable, and the district court did not err in refusing to suppress the evidence.

B

[¶ 12] Contrary to Bachmeier's assertions, the trooper need not have a reasonable and articulable suspicion at the time Bachmeier's vehicle was initially pursued.

[¶ 13] Chapters 39–09 and 39–10, N.D.C.C., set speed restrictions for motor vehicle operation. *See Jones v. Ahlberg,* 489 N.W.2d 576, 580–81 (1992). Chapter 39–10, titled "General Rules of the Road", includes a general provision regulating class A emergency vehicles, including vehicles operated by law enforcement personnel. *See* N.D.C.C. § 39–10–03. Section 39–10–03, in pertinent part, provides:

1.  The driver of a class A authorized emergency vehicle may:

    . . . .

    c.  Exceed the speed limit so long as the driver does not endanger life or property.

    . . . .

2.  The exceptions herein granted to a class A authorized emergency vehicle apply only:

    a.  When the authorized emergency vehicle is in pursuit of or apprehension of a violator or *a suspected violator* requiring the use of these exemptions.

    . . . .

(Emphasis added). The Legislature adopted the limitation to the class A emergency vehicle "speed" exception as it is currently enacted in 1963. *See* 1963 N.D. Sess. Laws ch. 264, § 3.

[¶ 14] Chapter 39–09, N.D.C.C., titled "Speed Restrictions", governs speed restrictions in North Dakota. Section 39–09–06, N.D.C.C., specifically exempts class A authorized emergency vehicles from the speed limitations imposed by chapter 39–09. Section 39–09–06 provides:

The speed limitations provided for in this chapter do not apply to class A authorized emergency vehicles. The exemptions provided for in this section do not protect the driver of any such vehi-

cle from the consequences of a reckless disregard of the safety of others.

*Id.* This provision was amended in 1963 to its current form in the same act as the relevant provisions of N.D.C.C. § 39–10–03. *See* N.D. Sess. Laws ch. 264, § 5.

[¶ 15] We have addressed these statutes once before in the context of civil liability when a law enforcement officer caused a traffic-related fatality after a high-speed car chase. *See Jones*, 489 N.W.2d 576. In *Jones*, we said:

> Under Section 39–09–06, N.D.C.C., class A emergency vehicles, including vehicles operated by law enforcement personnel, are *exempted from the speed limitations*, but the provision expressly states that the exemptions "do not protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others." Under Section 39–10–03, N.D.C.C., a class A emergency vehicle is also exempted from adhering to other specified rules of the road "only … when the … vehicle is in pursuit of … a *suspected violator* requiring the use of …" the exemptions. That section also states that the driver of the emergency vehicle may exceed the speed limit "*so long as he does not endanger life or property.*"

*Jones*, at 580–81 (emphasis added). However, we have never addressed the class A emergency vehicle "speed" exception in a criminal context, as it is presented here.

[¶ 16] "'Construction of statutes is a question of law and therefore fully reviewable.'" *State v. Higgins*, 2004 ND 115, ¶ 13, 680 N.W.2d 645 (quoting *State v. Beciraj*, 2003 ND 173, ¶ 14, 671 N.W.2d 250). The primary goal in construing and interpreting statutes is to ascertain the Legislature's intent. *See State v. Zahn*, 2007 ND 2, ¶ 9, 725 N.W.2d 894 (citing *State v. Buchholz*, 2005 ND 30, ¶ 6, 692 N.W.2d 105; *State v. Laib*, 2002 ND

95, ¶ 13, 644 N.W.2d 878). "Legislative intent must first be sought from the language of the statute." *Zahn*, at ¶ 9 (internal quotations omitted). We give the words in the statute their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–03. The Court interprets statutes to give meaning and effect to every word, phrase, and sentence, and we do not adopt a construction which would render part of the statute mere surplusage. *See* N.D.C.C. §§ 1–02–02 and 1–02–03; *see also Zahn*, at ¶ 9. If possible, we construe statutes on the same subject to harmonize them and to give full force and effect to the Legislature's intent. *Zahn*, at ¶ 9; *Higgins*, at ¶ 13. However, if a conflict between two statutes is irreconcilable, the more particular statute "must be construed as an exception to the general provision, unless the general provision is enacted later and it is the manifest legislative intent that such general provision shall prevail." N.D.C.C. § 1–02–07.

[¶ 17] When read together, N.D.C.C. §§ 39–09–06 and 39–10–03 authorize law enforcement personnel to exceed the posted speed limit to pursue a suspected violator, so long as it can be done without danger to life or property. Here, the trooper asserted that he suspected Bachmeier might be driving under the influence based on his training and experience. The trooper determined that at the time he observed Bachmeier, he suspected Bachmeier may be driving under the influence because "[t]here is a better percentage for driving under the influence of alcohol" after midnight. The district court concluded the trooper's suspicion was not "a reasonable justification for exceeding the posted speed limit," but stated the trooper's conduct was not so outrageous it would suppress the evidence of intoxication because the trooper exceeded the speed limit "on a rural stretch of

highway, late at night," where the trooper knew only of Bachmeier's car on the road.

[¶ 18] We need not review the district court's conclusion that the trooper lacked a "reasonable justification" for speeding because N.D.C.C. § 39–10–03 does not impose a "reasonableness" requirement on law enforcement's suspicion. The Legislature declined to provide a standard for the suspicion that will justify mere pursuit. We decline to specifically address that issue here. The reference to "suspected violator" in N.D.C.C. § 39–10–03 differs from and is less stringent than the "reasonable and articulable suspicion" standard we apply to investigative stops, as it illustrates the difference between the ability to follow a suspected violator and the authority to seize a suspect for investigative purposes.

[¶ 19] The mere pursuit of a suspected violator does not implicate the Fourth Amendment concerns until some authority or control is exercised over the suspect. *See Langseth*, 492 N.W.2d at 300; *Prouse*, 440 U.S. at 653, 99 S.Ct. 1391; *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. 1868. Therefore, while the reasonable and articulable suspicion standard does not apply before an officer may follow a motorist, the reasonable and articulable suspicion standard must be met before the officer can exert some authority or control over the motorist by stopping him.

## V

[¶ 20] The district court's judgment and its order denying Bachmeier's motion to suppress the evidence gathered from a traffic stop are affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

DANIEL J. CROTHERS.
I concur in the result.