## Commonwealth v. Martin

*Christopher Mitchell,* for Commonwealth.
*William T. Jorden,* for defendant.

SPATARO, *J.,* January 19, 2010—Defendant, James D. Martin, was operating his 24-foot AMF Crestliner Pontoon Boat on Conneaut Lake around 10:45 p.m. on August 1, 2009 when Officer John G. Hopkins, a waterways conservation officer for the Pennsylvania Fish and

Boat Commission, executed a stop of Martin's pontoon boat that led to Martin being charged with boating under the influence. Officer Hopkins was on routine patrol that evening with Officer Matt Visosky. According to Officer Hopkins, he observed Martin's pontoon boat at a time when Martin was traveling south, while the officers were traveling north on Conneaut Lake. Officer Hopkins did not immediately observe either the starboard (right/ green) or port (left/red) navigation lights on Martin's pontoon boat, contending that Martin's use of his docking lights, which illuminated the area in the front or the bow were so bright as to washout visibility of the navigation lights. As a consequence, Officers Hopkins and Visosky maneuvered their boat in a northwesterly direction, followed by a move in an easterly direction, intending to confront Martin with what they believed to be a violation of the boating laws of the Commonwealth of Pennsylvania; specifically, that the use of docking lights violated Pennsylvania Law because the docking lights impaired the visibility of the navigation lights. Although they observed Martin's fully functional navigation lights when they were about 10 to 12 feet from Martin's boat, they proceeded to stop and board Martin's boat.

Martin contends that the approach of the officers on Conneaut Lake was much different than described by the officers. He contends, along with his witnesses, that the officers actually approached his pontoon boat from the southwest and, as a result, would have been able to observe his navigation lights. Martin contends that the officers were predisposed to finding any reason to stop and board his pontoon boat, and the claim that his docking lights washed out observance of the navigation lights

on his pontoon boat was false. Martin contends that the officers are incorrect in their opinion that using docking lights at the same time as navigation lights is illegal. Our analysis of the issue now before the court does not require a credibility determination. For purposes of this decision, we will accept as credible the testimony of Officer Hopkins.

The issue is: Whether the simultaneous use of docking lights and navigation lights by a watercraft operator in the Commonwealth of Pennsylvania is prohibited, thereby providing probable cause for enforcement officers to stop and board a vessel exhibiting both docking lights and navigation lights at the same time?

From our review of Pennsylvania Law, we conclude that the use of docking lights, concurrently with the use of navigation lights, is not illegal. This decision is consistent with this court's reported decision in the case of *Commonwealth v. Spears,* Crawford Cty. L.J. vol. 26, no. 91 (Oct. 9, 2002).

Our analysis of this issue requires a progression through the statutes and regulations appearing in the Pennsylvania Administrative Code. The provisions of 30 Pa.C.S. §5123 authorize the Fish and Boat Commission to "promulgate such rules and regulations as it deems appropriate to provide for the operation and navigation of boats, including the rules of the road for boating, the ways, manner, methods and means of boating, the management of boats and the use thereof and the protection of waters for boating purposes." 30 Pa.C.S. §5123(a). The statutes of the Commonwealth are completely silent on whether the use of docking lights coincident with the

use of navigation lights is allowed or prohibited. Instead, one must look to the regulations promulgated by the Fish and Boat Commission to determine what the "rules of the road for boating" are for watercraft operators in the Commonwealth of Pennsylvania.

The next step is to consider the provisions appearing in 58 Pa. Code §95.3. The pertinent provisions of this code section read as follows: "[a] boat from sunset to sunrise and during periods of restricted visibility *shall carry and exhibit the lights prescribed* by the Inland Navigation Rules Act of 1980 (33 U.S.C. §2001-2073)." 58 Pa. Code §953(a). (emphasis added) Nothing is said about the manner in which those lights are to be utilized; rather the regulations address only the fact that a watercraft operator must carry and exhibit certain lights. Again, we note that Pennsylvania regulations are completely silent with respect to the use of any other lights or whether a watercraft operator may simultaneously utilize their navigation lights with any other lights, including docking lights. What is apparent, however, is that a watercraft operator must refer to the United States Code to determine what lights they are required to have and how those lights are to be exhibited.

The third step in our analysis requires that we consider the pertinent provisions of the United States Code. The pertinent provisions of 33 U.S.C. §2022 describe the "lights prescribed in these rules" along with the intensity. There was no testimony that Martin's pontoon boat was not equipped with the lights required by the Inland Navigational Rules Act, nor was there any testimony that the intensity of those lights fell below the

standards set forth in the Inland Navigational Rules or that the lights were not mounted properly. Martin's pontoon boat did carry and exhibit the lights required under the Inland Navigational Rules Act.

Although there was limited testimony elicited on the subject, we note that docking lights are mounted on the bow or front of a boat. They are of such intensity as to allow the watercraft operator to visualize the area where the operator intends to dock his or her boat. The Inland Navigational Rules Act does not have any regulations that relate to the luminescence of docking lights, where they are to be positioned, etc. It is not illegal for a watercraft operator to have docking lights.

The Commonwealth contends that the court must also look at the provisions of 33 U.S.C. §2020, specifically the provisions that read as follows: "[t]he rules concerning lights shall be complied with from sunset to sunrise, and during such times no other lights shall be exhibited, except such lights as cannot be mistaken for the lights specified in these rules or do not impair their visibility or distinctive character, or interfere with the keeping of a proper look out." 33 U.S.C. §2020(b). While there is the parenthetical reference to sections 2001 through 2073 of the U.S. Code, appearing in 58 Pa. Code §95.3(a), there is no directive within the Pennsylvania regulations that states that a watercraft operator must comply with those specific federal regulations. All Pennsylvania law requires is that a watercraft operator carry and exhibit the lights prescribed by the Inland Navigation Rules Act from sunset to sunrise and during periods of restricted visibility. It says nothing about the use of

other lights, such as docking lights, nor does it specifically incorporate the provisions of 33 U.S.C. §2020(b).

The Pennsylvania Supreme Court recently had occasion to review the law that pertains to the statutory construction of a penal statute. In the case of *Commonwealth v. McCoy,* 599 Pa. 599, 962 A.2d 1160 (2009), the Supreme Court held that the criminal statute making it a crime to discharge a firearm into an occupied structure could not be construed to also include the act of discharging a firearm while inside the structure. The Supreme Court stated the law as follows:

"Importantly, our interpretation is further supported by the statutory mandate that penal statutes 'shall be strictly construed.' 1 Pa.C.S. §1928(b)(1); see also, *Commonwealth v. McClintic,* 589 Pa. 465, 481, 909 A.2d 1241, 1251 (2006). Of course, the mandate to construe penal statutes narrowly does not override the 'general principle that the words of a statute must be construed according to their common and approved usage,' and does not require this court to give the words of a penal statute their 'narrowest possible meaning.' *Commonwealth v. Booth,* 564 Pa. 228, 234, 766 A.2d 843, 846 (2001). The mandate 'does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused.'" *Id.,* 599 Pa. at 614, 962 A.2d at1168-69.

In the instant matter, we have a layering of statutory and regulatory construction. The statute itself delegates to the Fish and Boat Commission the power to promulgate rules and regulations for the operation of boats. The

rules for statutory construction apply with at least the same force and effect, if not more, to the interpretation of regulations promulgated by an administrative agency. For that reason, when we apply a strict construction to the language of Pennsylvania Code section 95.3, that requires that a watercraft operator "shall carry and exhibit the lights prescribed by the Inland Navigational Rules Act of 1980," we cannot read into that clause the further requirement that a watercraft operator must also refrain from the use of lights that are not even mentioned in the Inland Navigation Rules Act of 1980, or if other lights are used, that they not impair the visibility or distinctive character of the required lights. 58 Pa. Code §95.3.

The Commonwealth cites three cases from other jurisdictions in support of its positions. All three cases are easily distinguishable.

The Commonwealth cites *Lustig v. Mondeau*, 211 Fed. Appx. 364 (6th Cir. 2006). The *Lustig* case was a civil action, brought in federal court, seeking damages against law enforcement officers who detained and later charged plaintiff with a boating under the influence violation. *Lustig*, 211 Fed. Appx. at 365. Plaintiff claimed that the stop of her pontoon boat was illegal. *Id.* In *Lustig,* the officers were unable to ascertain if plaintiff's navigation lights were on because the docking lights obstructed their view. *Id.* They then hailed plaintiff's boat and asked her about the navigation lights. *Id.* The essential facts in *Lustig* are as follows:

"*Without boarding,* the deputies asked plaintiff to turn the navigation and docking lights on and off. The depu-

ties reported that plaintiff required assistance in locating the switch for the docking lights; that the green navigation light was not visible when the docking lights were turned off; and that plaintiff's breath smelled of alcohol." *Id.* at 366. (emphasis added)

The officers in *Lustig* did not take further action until after talking with the plaintiff and establishing that the green navigation light was not functioning properly. *Id.* In the instant case, the officers knew full well that Martin's navigation lights were functional. There was no evidence of erratic or unsafe boating, nor the smell of alcohol, nor any difficulty on the part of Martin to locate the switches on his console. The officers lacked an articulable reason to board Martin's boat and should have waved him off after recommending that he turn his docking lights off once they were satisfied that the navigation lights were functioning properly.

*Lustig* illustrates the rather obvious difference between the ability of people to interact on boats and vehicles. In a moving vehicle, it is virtually impossible for a police officer to drive alongside a motorist and carry on a conversation. Hence, the only safe method of making an inquiry is to have the motorist bring his vehicle to a complete stop and then to engage the motorist in conversation.

Boats are obviously much different and the difference between stopping a boat and boarding a boat is significant. A law enforcement officer is able to carry on a conversation with a watercraft operator without the need to board the watercraft operator's boat. Boarding a boat is no less intrusive than entering one's vehicle or dwell-

ing without a warrant. The law requires at least reasonable suspicion, if not probable cause, before an officer is permitted to board a boat, and any evidence obtained in the absence of probable cause is subject to suppression. *Commonwealth v. Lehman,* 857 A.2d 686, 688 (Pa. Super. 2004). This is especially pertinent when one considers that significant interaction, including conversation, can occur without the necessity of the law enforcement officer boarding the suspect's vessel.

In the instant case, there was no probable cause to warrant the boarding of defendant's boat or conducting the investigation that ensued. The concerns of the officers could have easily and unobtrusively been addressed by simply telling the defendant to turn off his docking lights. Instead, the officers used the fact that the defendant was utilizing his docking lights as a pretext for an illegal boarding of his boat; the functional equivalent of an arrest because there would have been no place for Martin to go. The pretextual nature of the boarding is clear because of the way the officers approached Martin's boat. These officers approached Martin's boat head-on so that the likelihood of the docking lights washing out the starboard and port navigation lights was at its greatest. Had they approached from either the starboard or port sides, they would have seen the navigation lights much closer than 10 to 12 feet.

The Commonwealth also cites *State v. Warren,* 78 S.W.3d 797 (Mo. App. 2002) in support of its position. In the *Warren* case, much like the present case, law enforcement authorities stopped and boarded the defendant's boat because the operator had both his docking

lights and navigation lights on at the same time. *Warren,* 78 S.W.3d at 798. If anything, the *Warren* case further supports defendant's position in this case, as the court in *Warren* held that the officer's stop of the defendant's vessel "was pretextual and without reasonable suspicion because defendant was not operating his vessel in violation of the law." *Id.* at 799.

Finally, the Commonwealth points to *State v. Higgins,* 680 N.W.2d 645 (N.D. 2004) in support of the Commonwealth's position. In *Higgins,* the defendant was charged with a boating under the influence offense that followed from the stop of defendant's boat because the ability of the enforcement officers to observe defendant's navigation lights was impaired by the docking lights. *Higgins,* 680 N.W.2d at 648. What distinguishes the *Higgins* case from the instant case is that in North Dakota, the regulations are specific in describing the lighting requirements of all vessels and does not merely refer to the Inland Navigational Rules Act. *Id.* The North Dakota regulations precisely define the distances from which navigation lights must be observed. Pennsylvania law falls short in providing that level of regulation.

Boaters are entitled to know what the law is and the legislature would do well by addressing the lack of clarity that now exists. Manufacturers of pontoon boats equip these vessels with docking lights to aid the operator in docking their boats at night. Some boaters turn these lights on, even when not docking, to make themselves more visible to other vessels and so that they can see better; unaware that their navigation lights may be washed out. These operators are not cognizant of the

purpose of the navigation lights to aid other boaters in ascertaining the direction of travel of the pontoon boat operator. Martin's counsel notes in his brief that if "the Commonwealth's interpretation of the federal rule is correct, then the only time that the use of docking lights would not be illegal would be when a boat is tied to the dock and not underway."

The legislature should adopt a comprehensive statute, much like the Motor Vehicle Code, to make clear the law of this Commonwealth. If the legislature is not prepared to act, then it falls upon the Fish and Boat Commission to engage in a comprehensive review of its regulations to identify those areas that require greater clarity.

This court finds that the officers lacked probable cause, or even reasonable suspicion of a violation of the Fish and Boat Code, to stop and board Martin's pontoon boat. The use of docking lights in concert with navigation lights is not a violation of the law in this Commonwealth. The claimed impairment in the officers' view of the navigation lights by reason of the use of Martin's docking lights was pretextual because of the method of the approach toward Martin's boat taken by these officers. Moreover, once aware that the navigation lights were functional, the officers no longer possessed any reason to board Martin's boat because, at that point, the officers were aware of Martin's compliance with the regulation that he "carry and exhibit the lights prescribed by the Inland Navigation Rules Act." 58 Pa. Code §95.3(a). In conformity with the Superior Court's holding in *Commonwealth v. Lehman, supra,* this court will suppress all evidence obtained from the illegal stop and boarding of Martin's pontoon boat.

### ORDER

And now, January 19, 2010, the court grants defendant's suppression motion and suppresses all evidence obtained following the stop of defendant's pontoon boat.