# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 53

Carter Allan Schulke,     Appellee

     v.

William T. Panos, Interim Director,

Department of Transportation     Appellant

## No. 20190328

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

REVERSED.

Opinion of the Court by Jensen, Chief Justice, in which Justice Tufte and Surrogate Judge Haskell joined. Justice McEvers filed a concurring opinion, in which Justice VandeWalle and Surrogate Judge Haskell joined.

Jesse Walstad (argued), Bismarck, ND, and Luke T. Heck (on brief) and Drew J. Hushka (on brief), Fargo, ND, for appellee.

Douglas B. Anderson, Assistant Attorney General, Bismarck, ND, for appellant.

# Schulke v. NDDOT
## No. 20190328

**Jensen, Chief Justice.**

[¶1]   The North Dakota Department of Transportation (NDDOT) appeals from a district court's judgment reversing an administrative hearing officer's decision to revoke Schulke's driving privileges for a period of three years.  The NDDOT argues that the district court erred in reversing the administrative hearing officer's determination that Schulke refused an alcohol related screening test in violation of N.D.C.C. § 39-20-14(1).  We reverse the district court's judgment and reinstate the decision of the administrative hearing officer.

I

[¶2]   The facts of this case are not in dispute.  On May 11, 2019, following a high-speed pursuit, Schulke was stopped by law enforcement, arrested for fleeing, driving under suspension, reckless endangerment, and possession of drug paraphernalia, handcuffed, and placed in a patrol car.  While Schulke was seated in the backseat of the patrol car the arresting officer smelled alcohol emanating from Schulke.  Because of safety concerns and Schulke's behavior, the arresting officer did not conduct field sobriety tests or request an alcohol related screening test at the location of the stop.

[¶3]   At the correctional center, the arresting officer requested Schulke perform field sobriety tests.  Schulke refused to perform the field sobriety tests.  Schulke was then read the implied consent warning for the screening test and asked to submit to a screening test pursuant to N.D.C.C. § 39-20-14(1).  Schulke refused to submit to the screening test.  Schulke was then read the implied consent advisory for an Intoxilyzer breath test pursuant to N.D.C.C. § 39-20-01.  Schulke refused to take the breath test, became extremely uncooperative, and was eventually placed in confinement.  Schulke was informed that in addition to the other charges, he was being arrested for "DUI Refusal."

1

[¶4] Schulke requested an administrative hearing to challenge the suspension of his driving privileges. The administrative hearing officer determined that Schulke refused to submit to the screening test and the Intoxilyzer breath test. However, the administrative hearing officer revoked Schulke's driving privileges by referencing only the refusal of the screening test.

[¶5] Schulke appealed the administrative hearing officer's decision arguing he could not be determined to have refused to submit to the screening test because the test was not administered at the location of the stop. Schulke asserts the term "onsite" as used in N.D.C.C. § 39-20-14(1), with respect to determining a refusal to submit to a screening test, requires the request to submit to the screening test be made at the location of the stop. The district court reversed the administrative hearing officer's decision after finding the administrative hearing officer's conclusion that Schulke had refused an "onsite" screening test was erroneous as a matter of law because the test occurred at a location other than the location of the traffic stop. The NDDOT initiated this appeal from the judgment of the court.

II

[¶6] The NDDOT argues the administrative hearing officer correctly held Schulke had refused a screening test in violation of N.D.C.C. § 39-20-14. "This Court reviews administrative agency decisions to suspend driving privileges under N.D.C.C. ch. 28-32 and accords great deference to the agency's decision." *Alvarado v. N.D. Dep't of Transp.*, 2019 ND 231, ¶ 6, 932 N.W.2d 911. This Court must affirm an order by an administrative agency unless the order is not in accordance with the law. *Guthmiller v. Director, N.D. Dep't of Transp.*, 2018 ND 9, ¶ 6, 906 N.W.2d 73 (*citing Hamre v. N.D. Dep't of Transp.*, 2014 ND 23, ¶ 6, 842 N.W.2d 865).

[¶7] Schulke does not dispute the arresting officer had sufficient reason to request him to submit to a screening test. Schulke argues the arresting officer did not request a screening test in compliance with N.D.C.C. § 39-20-14(1)

2

because the unambiguous language of the statute requires the test to be conducted "onsite" which he equates to at the location of the stop.

[¶8] The interpretation of a statute is a question of law and is fully reviewable on appeal. *Guthmiller v. Director, N.D. Dep't of Transp.*, 2018 ND 9, ¶ 6, 906 N.W.2d 73. This Court's primary purpose when interpreting a statute is to determine legislative intent. *Herman v. Herman*, 2019 ND 248, ¶ 8, 934 N.W.2d 874. "When reviewing statutory provisions, we attempt to give meaning to every word, phrase, and sentence." *State v. Comes*, 2019 ND 290, ¶ 7, 936 N.W.2d 114 (*State v. Kostelecky*, 2018 ND 12, ¶ 8, 906 N.W.2d 77). "A statute is ambiguous when it is susceptible to differing, but rational, meanings." *Guthmiller*, at ¶ 8 (*quoting Doyle v. Sprynczynatyk*, 2001 ND 8, ¶ 10, 621 N.W.2d 353). "When a provision at issue is unambiguous, we look to the plain language of the statute to ascertain its meanings." *State v. Comes,* 2019 ND 290, ¶ 7*,* 936 N.W.2d 114 (*citing* N.D.C.C. § 1-02-05). If possible, this Court will construe statutes on the same subject to harmonize them and to give full force and effect to the legislature's intent. *State v. Higgins*, 2004 ND 115, ¶ 13, 680 N.W.2d 645 (*quoting Gratech Co., Ltd. v. Wold Eng'g, P.C.,* 2003 ND 200, ¶ 12, 672 N.W.2d 672). When reviewing statutes relating to the same subject matter, we construe the statutes to give effect to both. *Id.*

[¶9] "The North Dakota Century Code authorizes two separate tests, each for a specific purpose under N.D.C.C. §§ 39-20-01 and 39-20-14." *Roberts v. N.D. Dep't of Transp.*, 2015 ND 137, ¶ 11, 863 N.W.2d 529. Section 39-20-04, N.D.C.C., authorizes the revocation of a motorist's driving privileges when they refuse to submit to the preliminary screening test under N.D.C.C. § 39-20-14. *Id.* Section 39-20-14(1) and (2), N.D.C.C., govern when an officer may request a motorist to submit to a screening test and read as follows:

> 1. Any individual who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the individual's breath for the purpose of estimating the alcohol concentration in the individual's breath upon the request of a law enforcement officer who has reason to believe that the individual committed a moving traffic violation or a violation under section 39-08-01 or an equivalent

offense, or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol.

2. An individual may not be required to submit to a screening test or tests of breath while at a hospital as a patient if the medical practitioner in immediate charge of the individual's case is not first notified of the proposal to make the requirement, or objects to the test or tests on the ground that such would be prejudicial to the proper care or treatment of the patient.

[¶10] In N.D.C.C. § 39-20-14, the first reference to a "screening test" appears in subsection 1 and is preceded by the word "onsite." That is the only use of the word "onsite" within N.D.C.C. § 39-20-14. There are six subsequent references to "screening test" within subsections 2, 3, and 4 of N.D.C.C. § 39-20-14 that are not modified by the word "onsite." Despite the use of the term "onsite" within subsection 1, when reviewing N.D.C.C. § 39-20-14 in its entirety, we conclude all of the subsections are unambiguously referring to the same test, regardless of whether it is referred to as an "onsite" screening test as provided in subsection 1 or the six subsequent references to just "screening test" in the following subsections.

[¶11] The dispositive question in this case is whether the use of the word "onsite" in subsection 1 of N.D.C.C. § 39-20-14 must be interpreted as requiring the screening test to be conducted at the location of the stop as advocated by Schulke. We are guided by our rules of statutory instruction which include a requirement to construe statutes on the same subject to harmonize both statutes, to give full force and effect to the legislature's intent. *State v. Higgins*, 2004 ND 115, ¶ 13, 680 N.W.2d 645. This Court reviews statutes relating to the same subject matter in a light allowing this Court to give effect to both. *Id*.

[¶12] Immediately following subsection 1 and its singular reference to "onsite" is a directive within subsection 2 on how to conduct screening tests if the individual has been admitted to a hospital as a patient. It limits a request for a screening test of a patient at a hospital by requiring notification of the medical practitioner in immediate charge of the patient and allowing the

4

medical practitioner to object to the testing on the ground it would be prejudicial to the proper care or treatment of the patient. Subsection 2 is not written as an exception to screening tests only being allowed at the location of the traffic stop, but places limitations on screening tests at a particular location away from the location of the stop.

[¶13] Schulke's interpretation of N.D.C.C. § 39-20-14 to limit the scope of implied consent to screening testing to the location of the stop would eliminate any need for subsection 2. If implied consent only applied to the location of the traffic stop, there would be no consent implied to any request at a hospital, and subsection 2 would have no purpose. We must reconcile the two statutory provisions in a manner that gives effect to both provisions. We can reconcile the two provisions by interpreting subsection 1 as establishing that drivers are deemed to have provided consent to submit to a screening test when the driver commits a traffic offense or is involved in an accident and, in conjunction with the traffic violation or accident, law enforcement formulates an opinion the driver's body contains alcohol. In order to give effect to subsection 2, we cannot interpret subsection 1 as requiring the screening test to be conducted at the location of the stop.

[¶14] We also note the implied consent advisory required to be given before requesting the screening test only references "screening test." The advisory required by the legislature reads as follows:

> The officer shall inform the individual that North Dakota law requires the individual to take the screening test to determine whether the individual is under the influence of alcohol and that refusal of the individual to submit to a screening test may result in a revocation for at least one hundred eighty days and up to three years of that individual's driving privileges.

N.D.C.C. § 39-20-14(3). It would be inconsistent to hold the screening test is limited to the location of the traffic stop when the required advisory does not include any such limitation.

[¶15] We are cognizant of Schulke's argument the legislature did not intend drivers suspected of driving in violation of N.D.C.C. § 39-08-01 to be

5

transported from the location of the traffic stop for the purpose of a screening test pursuant to N.D.C.C. § 39-20-14. We have concluded the purpose of the test is to assist an officer in determining whether reasonable grounds exist to arrest the motorist for driving under the influence. *Roberts v. N.D. Dep't of Transp.*, 2015 ND 137, ¶ 9, 863 N.W.2d 529 (citing *Yellowbird v. N.D. Dep't of Transp.*, 2013 ND 131, ¶ 10, 833 N.W.2d 536); *Cf. State v. Woytassek*, 491 N.W.2d 709, 712 (N.D. 1992) ("Given the test's purpose, to require that an arrest precede an on-site screening test would render the statute meaningless."). *See also City of Devils Lake v. Grove*, 2008 ND 155, ¶ 28, 755 N.W.2d 485 (The transportation of a defendant from the scene of a traffic stop to the Law Enforcement Center requires probable cause.).

[¶16] Whether a driver has refused to take the screening test within the meaning of the statute is a question of fact. *Obrigewitch v. N.D. Dep't of Transp.*, 2002 ND 177, ¶ 14, 653 N.W.2d 73. Whether a driver declining to submit to a screening test that has been requested under unusual circumstances constitutes a refusal should remain a question of fact. In this case, Schulke had already been placed under arrest for other crimes, had been transported to the correctional facility in connection with the other offenses for which he had been arrested, and the arresting officer did not conduct his preliminary investigation of Schulke's potential alcohol violation at the location of the stop because of safety concerns. In this case we are not required to decide whether a driver, not yet subject to an arrest, can refuse to accompany a law enforcement officer to a location other than the location of the stop for the purpose of submitting to a screening test. Under the circumstances of this case, the factual finding that Schulke refused the screening test at a location other than the location of the traffic stop is supported by a preponderance of the evidence.

III

[¶17] Schulke requests this Court grant him attorney fees under N.D.C.C. § 28-32-50(1) which generally "requires a court to award reasonable attorney fees and costs to a 'prevailing' claimant when an administrative agency has acted without 'substantial justification.'" *French v. Director, N.D. Dep't of*

6

*Transp.*, 2019 ND 172, ¶ 19, 930 N.W.2d 84 (*citing Drayton v. Workforce Safety & Ins.*, 2008 ND 178, ¶ 38, 756 N.W.2d 320). In light of our reversal of the district court judgment, the request for attorney fees for the appeal to this Court is denied.

## IV

[¶18] Under the circumstances of this case, the administrative hearing officer's determination Schulke had refused to submit to a screening test after being arrested for other offenses and transported to a correction facility is supported by a preponderance of the evidence. Schulke's request for attorney fees on appeal is denied. We reverse the district court's judgment and reinstate the decision of the administrative hearing officer because administration of the screening test was not limited to the location of the traffic stop.

[¶19] Jon J. Jensen, C.J.
Jerod E. Tufte
Bruce B. Haskell, S.J.

**McEvers, Justice, concurring specially.**

[¶20] I concur in the result. I agree with and have signed the majority opinion. The term "onsite" was not intended to limit the authority of law enforcement;

7

rather, it was to expand the authority to give a screening test in additional situations. The term "onsite" was added to the statute in 1973 to allow the use of a soon to be approved screening device by law enforcement. *Hearing on S.B. 2132 Before the Senate Transp. Comm.*, 43rd N.D. Legis. Sess. (March 1, 1973) (testimony of Tom Kelch). The inclusion of the word "onsite" was intended to expand the authority of law enforcement to conduct a screening test, as the previous statute only allowed testing where there had been an accident resulting in death or personal injury. *Hearing on S.B. 2132, supra (*testimony of Sen. Mutch). While the vast majority of "onsite" testing will be at the location of the traffic stop, the narrow reading of the statute as proposed by Schulke would lead to absurd results and encourage drivers to flee the scene or engage in combative behavior to avoid the consequences of driving under the influence.

[¶21]  Lisa Fair McEvers
      Gerald W. VandeWalle
      Bruce B. Haskell, S.J.

[¶22] The Honorable Bruce B. Haskell, Surrogate Judge, sitting in place of Crothers, J., disqualified.

8